UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, (U.S.), Plaintiff, | : | |
| v. | : | CA 05-172 S |
| IDA CONROY, PAUL S. DAVENPORT, PAUL GONYA, CAROL KIMBERLY GRIGGS a/k/a CAROL KIMBERLY, JEFFREY LUIZ, H. LOCKE MACDONALD, A. MICHAEL MARINO, ROBERT R. NADEAU, ANTHONY J. ROBBIO, JR, and FREDERICK VON FREDREK,[1] Defendants. | : | |

**MEMORANDUM AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO DEPOSIT PROCEEDS**
**AND DENYING MOTIONS TO VACATE DEFAULT**

Before the court are seven motions:

1. Plaintiff's, Sun Life Assurance Company of Canada, (U.S.) Motion to Deposit Proceeds into Court (Document ("Doc.") #21) ("Motion to Deposit Proceeds");

2. Defendant Paul S. Davenport's Motion to Vacate Default (Doc. #41);

3. Defendant Paul Gonya's Motion to Vacate Default (Doc. #56);

4. Defendant A. Michael Marino's Motion to Vacate Default (Doc. #53);

[1] The spelling of Defendant Frederick Von Fredrek's name is reproduced as it appears in the Complaint. A different spelling, "Von Frederek," appears in the caption of his answer (Document ("Doc.") #45) and in the caption of his motion to vacate default (Doc. #44). A third spelling appears in the title and signatory paragraph of these latter two documents: "Von Frederick." Answer of Defendant Frederick Von Frederick at 1, 6; Defendant Frederick Von Frederick's Motion to Vacate Default at 1. Unless citing to or quoting from the latter documents, the court uses the spelling which appears in the Complaint.

5. Defendant Anthony J. Robbio's Motion to Vacate Default (Doc. #47);

6. Defendant Robert R. Nadeau's Motion to Vacate Default (Doc. #50);

7. Defendant Frederick Von Frederick's Motion to Vacate Default (Doc. #44).

The court refers collectively to the above motions as the "Motions." It refers to motions 2 through 7 as the "Motions to Vacate" and to the Defendants seeking to vacate the defaults as the "Moving Defendants."

**The Hearing**

A hearing on the Motions was held on January 6, 2006. Shortly after it commenced, counsel for Plaintiff orally moved to amend the Motion to Deposit Proceeds so that it sought an Order permitting Plaintiff to deposit the proceeds of five (and not seven) annuity contracts with the Clerk of the Court until resolution of the litigation. The two annuity contracts to be excluded by the oral motion are numbered 056 and 065 which are referenced respectively in ¶¶ 33-36 and ¶¶ 37-41 of the Complaint. No party voiced an objection to the oral amendment, and it was allowed by the court. Thereafter, the court listened to argument on the Motions and took them under advisement.

**Motion to Deposit Proceeds**

The only party who filed a response to the Motion to Deposit Proceeds is Defendant Carol Kimberly Griggs ("Defendant Griggs"). In her response, Defendant Griggs urged the court to: (a) defer consideration of the motion, (b) deny it without prejudice, or (c) allow the motion expressly without prejudice to any of the rights of Defendant Griggs. Response of Defendant Griggs to Plaintiff's Motion to Deposit Proceeds of Annuity Contracts into Court (Doc. #39) ("Griggs' Response Mem."). However, at the hearing, her counsel stated that she did not object to the

granting of the Motion to Deposit Proceeds if the court determined that the Motions to Vacate should be denied. As explained in the following section, the court has now made that determination. Thus, no party objects to the Motion to Deposit Proceeds. The court sees no reason why it should not be granted. Accordingly, the Motion to Deposit Proceeds, as orally amended at the January 6, 2006, hearing, is hereby GRANTED.[2] Plaintiff shall be permitted to deposit the proceeds of the five annuity contracts, with a value as of January 10, 2006, of $273,457.64, with the court.

**Motions to Vacate**

Fed. R. Civ. P. 55(c) provides that for good cause shown the court may set aside an entry of default. KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003); McKinnon v. Kwong Wah Rest., 83 F.3d 498, 502 (1st Cir. 1996). The burden of demonstrating good cause for the removal of a default rests with the party seeking the relief. See KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 14. Good cause is a mutable standard, varying from situation to situation, but it is not so elastic as to be devoid of substance. McKinnon v. Kwong Wah Rest., 83 F.3d 498 at 503. There is no precise formula for making this

---

[2] The court is cognizant that there are on-going state proceedings which may affect two of the annuity contracts, numbered 038 and 074, which are the subject of this action. See Memorandum of Defendant Griggs in Support of Response to Plaintiff's Motion to Deposit Proceeds of Annuity Contracts into Court ("Griggs' Response Mem.") at 2 (so stating). As this court does not wish to disrupt those proceedings, any interested party may file a motion seeking a stay of further proceedings in this matter. See Home Indem. Co. v. Moore, 499 F.2d 1202, 1206 (8th Cir. 1974)("[A] court may dismiss or stay an interpleader proceeding if an action already pending before another court might obviate the need for employing the interpleader remedy or eliminate the threat of multiple vexation."); cf. Equitable Life Assurance Soc'y of the United States v. Porter-Englehart, 867 F.2d 79, 83 (1st Cir. 1989)(noting that "federal courts should dismiss interpleader actions when federal adjudication would disrupt ongoing state proceedings-a concept with which we can readily agree.").

determination. KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 12; McKinnon v. Kwong Wah Rest., 83 F.3d at 503. Each case necessarily turns on its own unique circumstances. Id. However, the First Circuit has identified seven factors which should be considered in determining whether good cause has been shown. Id. The seven factors are: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; 6) the amount of money involved; (7) the timing of the motion [to set aside entry of default]." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 12 (quoting McKinnon v. Kwong Wah Rest., 83 F.3d at 503)(alteration in original).

***Willfulness***

The record indicates that five of the Moving Defendants, Robbio, Davenport, Gonya, Marino, and Nadeau, signed a waiver of service of process in this matter. The waivers contained the following statements:

> I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after ____________[3], or within 90 days after that date if the request was sent outside the United States.
>
> ....
>
> A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the Court. If the answer or motion is not served within this time, a default judgment may be taken

[3] The date which appears in this space on the Waiver of Service of Summons is "5/11/05" for Defendants Robbio, Davenport, Gonya, and Nadeau, see Doc. #6; Doc. #9; Doc. #10; Doc. #13, and "5/27/05" for Defendant Marino, see Doc. #12.

against that defendant.

Waiver of Service of Summons (Doc. #6 (Robbio Waiver); Doc. #9 (Davenport Waiver); Doc. #10 (Gonaya Waiver); Doc. #12 (Marino Waiver); Doc. #13 (Nadeau Waiver)).

Defendant Von Fredrek was personally served with a summons and a copy of the Complaint on July 25, 2005. See Doc. #5 at 2 (Return of Service). The Summons stated that he was:

> required to serve upon PLAINTIFF'S ATTORNEY ... an answer to the complaint which is herewith served upon you, within twenty days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Summons (Doc. #5).

Plaintiff filed a request to default the Moving Defendants on October 24, 2005. See Request for Default of Defendant, Paul S. Davenport (Doc. #24); Request for Default of Defendant, Frederick Von Fredrek (Doc. #25); Request for Default of Defendant, Anthony J. Robbio, Jr. (Doc. #26); Request for Default of Defendant, Robert R. Nadeau (Doc. #27); Request for Default of Defendant, A. Michael Marino (Doc. #28); Request for Default of Defendant, Paul Gonya (Doc. #30). A copy of each request was sent to each Moving Defendant. See id. The Clerk entered default against the Moving Defendants on that same day. See Docket; see also Doc. #31; Doc. #32; Doc. #33; Doc. #34; Doc. #35; Doc. #37.

On November 16, 2005, the Moving Defendants filed the instant Motions to Vacate and answered the Complaint. See Docket. Thus, the answers for Defendants Davenport, Gonya, Marino, Nadeau, and Robbio were filed more than four months after they were due. Defendant Von Fredrek's answer was filed more than three months after it was due. The Motions to Vacate were

filed approximately three weeks after default had entered.

While each Moving Defendant has submitted a memorandum in support of his Motion to Vacate, the memoranda are virtually identical, appearing to differ only in stating that Defendant Von Fredrek "was served with a copy of the summons and complaint on July 25, 2005," Memorandum of Defendant Frederick Von Frederick in Support of his Motion to Vacate Default at 2, and that the other five Moving Defendants agreed to sign a waiver of service on various dates in May and June of 2005, see Memorandum of Defendant Paul S. Davenport in Support of his Motion to Vacate Default at 2 (June 15, 2005); Memorandum of Defendant Paul Gonya in Support of his Motion to Vacate Default at 2 (May 23, 2005); Memorandum of Defendant A. Michael Marino in Support of his Motion to Vacate Default at 2 (May 30, 2005); Memorandum of Defendant Anthony J. Robbio, Jr[.,] in Support of his Motion to Vacate Default at 2 (June 1, 2005); Memorandum of Defendant Robert R. Nadeau in Support of his Motion to Vacate Default at 2 (June 20, 2005). The court refers collectively to the memoranda filed by the Moving Defendants as the "Moving Defendants' Mem."

In their memoranda, the Moving Defendants state that they have filed a suit in the Providence Superior Court contesting, among other things, that Defendant Griggs is entitled to the annuity proceeds identified by the Plaintiff in this action. Moving Defendants' Mem. at 1. The Moving Defendants further state that each of them is entitled some or all of the proceeds of the annuity contracts and not Defendant Griggs. Id. at 2. Most significantly for purposes of resolution of the instant Motions to Vacate, each of the Moving Defendants also states: (1) that he was "represented in this action and in the action in Superior Court by Alfred Factor, Esq.," Moving Defendants' Mem. at 2; (2) that he "recently ended his relationship with Mr. Factor, in part, for reasons that form the factual basis of this

Motion to Vacate,"[4] id.; (3) that after either signing a waiver of service or (in the case of Von Fredrek) being served with a copy of the summons and complaint he "conveyed that waiver and copy of the Complaint to his attorney and consulted with him," id.; (4) that he "relied upon advice of counsel, and was impressed with the belief that his attorney was participating in this action with an eye toward defendant's interest," id.; and (5) that "[a]t or about the time that [his] relationship with his attorney broke down, defendant became aware that on or about October 21, 2005, plaintiff requested that defendant be defaulted for failure to file an answer to the Complaint," id.

Defendant Griggs, who objects to the Motions to Vacate, has filed an affidavit from Alfred Factor, Esquire ("Attorney Factor"), which directly contradicts or casts serious doubt on the above five statements. See Defendant Carol Kimberly Griggs' Memorandum of Law in Support of Objection to Motions to Set Aside Entry of Defaults Filed on Behalf of Defendants Nadeau, Gonya, Marino, Robbio, Davenport and Von Fredrek ("Griggs' Objection Mem."), Exhibit ("Ex.") A (Affidavit of Alfred Factor, Esq.) ("Factor Aff."). In his affidavit, Attorney Factor swears that:

> 4. I was never contacted by the defendants Robbio, Nadeau, Von Fredrek, or Davenport concerning these proceedings. They did not request that I represent them or otherwise consult with me, and I did not provide them any advice concerning these proceedings.
>
> 5. Michael Marino did not give me any court documents concerning this matter, and I did not provide him any advice concerning this matter in the federal court.

---

[4] On September 28, 2005, Attorney Factor served each Moving Defendant with a motion to withdraw as counsel in the related state court action. See Defendant Carol Kimberly Griggs' Memorandum of Law in Support of Objection to Motions to Set Aside Entry of Defaults Filed on Behalf of Defendants Nadeau, Gonya, Marino, Robbio, Davenport and Von Fredrek ("Griggs' Objection Mem."), Ex. C (Motion to Withdraw) at 2 (Certification).

> 6. I was never retained and did not agree to represent the defendant Paul Gonya in this matter in the federal court. I have never received from him, or anyone on his behalf, any court documents concerning this matter in the federal court. I advised Mr. Gonya in writing on July 13, 2005[,] and July 26, 2005[,] that I was not engaged to represent him in these federal proceeding[s], and had not received any court documents from him or anyone else in this matter in the federal court. I did not otherwise agree, or represent, that I would protect his interests, or take any steps on his behalf in this matter in the federal court. Mr. Gonya did not consult with me, nor did I give him any advice, concerning this matter in the federal court.

Factor Aff. ¶¶ 4-6.

Attorney Factor was present at the January 6, 2006, hearing. Prior to excusing him, the court asked counsel for the Moving Defendants if he wished to ask Attorney Factor any questions. Counsel indicated he did not. The Moving Defendants have not submitted any affidavits to dispute Attorney Factor's statements or otherwise support their claim that they "believed that whatever deadlines existed were being managed by [Attorney Factor]." Moving Defendants' Mem. at 3. Given Attorney Factor's affidavit, if the Moving Defendants believed that Attorney Factor was managing the deadlines in this matter which pertained to them, the court is unable to find that such a belief was reasonable. The Moving Defendants were plainly on notice that they could be defaulted if they failed to answer or otherwise respond to the Complaint within the time specified in the notices which they received. Consequently, the court finds that their default was willful.

***Good Faith***

The court is unable to find that the Moving Parties have acted in good faith. The arguments they have presented in the Moving Defendants' Mem. are either contradicted or seriously undermined by the facts to which Attorney Factor attests in his

affidavit. The court draws an adverse inference from the failure of the Moving Defendants to support their arguments with affidavits or to challenge Attorney Factor's sworn statement with their own sworn statements. The court also draws an adverse inference from the fact that they declined the opportunity to question Attorney Factor at the hearing.

***Meritorious Defense***

None of the Moving Defendants has demonstrated that he has a meritorious defense, or in this case a meritorious claim to the funds which Plaintiff seeks to deposit. Although vacating the default would not prejudice Plaintiff, the court agrees that it would prejudice Defendant Griggs as she has been seeking an expeditious resolution of the dispute over her right to these funds and granting the Motions to Vacate would further delay resolution of this dispute. In addition, "a default judgment may stand even when there has been no showing of substantial prejudice to the party benefiting from the default. A district court simply may insist upon compliance with its local rules." United States v. The Proceeds of Sale of 3,888 Pounds of Atlantic Sea Scallops, 857 F.2d 46, 49 (1st Cir. 1988). If a default judgment may so stand, there appears to be no reason why a default may not similarly stand as the concept of default has benefits which inure to the benefit of the judicial system. Default:

> "provide[s] a useful remedy when a litigant is confronted by an obstructionist adversary," and "play[s] a constructive role in maintaining the orderly and efficient administration of justice." Enron Oil Corp. v. Diakuhara, 10 F.3d [90,] 96 [(2nd Cir. 1993)]. It furnishes an invaluable incentive for parties to comply with court orders and rules of procedure. See Fed.R.Civ.P. 37(b)(2)(C). It encourages the expeditious resolution of litigation and promotes finality. See [10A] Wright, Miller & Kane, [Federal Practice and Procedure: Civil 3d], § 2693.

KPS & Assocs, Inc. v. Designs by FMC, Inc., 318 F.3d at 13 (first and second alterations in original).

***Explanation for Default***

The explanation offered by the Moving Defendants for the default appears to be that they relied upon Attorney Factor to handle their interests in this proceedings. Moving Defendants' Mem. at 2. However, the First Circuit, to which this court is subservient, follows the teachings of the Supreme Court in Link v. Wabash R.R., 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962), and "'turn[s] a deaf ear' to the claim that the client should not suffer for the attorney's sins." United States v. The Proceeds of Sale of 3,888 Pounds of Atlantic Sea Scallops, 857 F.2d at 49. Moreover, the Moving Defendants are vague as to when they became aware that Attorney Factor was not representing them in this matter. Moving Defendants' Mem. at 2. They all imply that this occurred after "on or about October 21, 2005 ...." Id. Yet, at least as to Defendant Gonya this contention is untenable given Attorney Factor's statement that he advised Mr. Gonya in writing on July 13, 2005, and July 26, 2005, that he was not engaged to represent Defendant Gonya in this action. Factor Aff. ¶ 6. In short, the explanation offered by the Moving Defendants for their default is not recognized in this Circuit. Even if it were, the vagueness of their explanation renders it unpersuasive.

***Timing of Motions to Vacate***

This same vagueness makes discussion of the timing of the motions problematic. While it is certain that the Moving Defendants filed their Answers and Motions to Vacate on November 16, 2005, it is not clear, except as to Defendant Gonya, when they learned that Attorney Factor was not representing them in this matter. The latter date (or dates) is important for the court in determining whether the Moving Defendants acted promptly

to remedy the default situation which existed. In the case of Defendant Gonya, the court finds that he did not act with reasonable promptness. More than four months elapsed between Defendant Gonya being notified by Attorney Factor that he was not representing Gonya in this matter and Defendant Gonya filing his answer and motion to vacate default. As to the other Moving Defendants, the court weighs this factor adversely against them because they have provided insufficient information to allow the court to fairly evaluate the timing issue.

***Amount of Money Involved***

Plaintiff, pursuant to the original Motion to Deposit Proceeds, sought leave to deposit the proceeds of seven annuity contracts with a total value as of September 13, 2005, of $306,761.87. See Memorandum in Support of Sun Life Assurance Company of Canada's, (U.S.) Motion to Deposit Proceeds of Annuity Contracts into Court ("Plaintiff's Mem.") at 2. As orally amended, the Motion to Deposit Proceeds sought leave to deposit the proceeds of five annuity contracts. The value of those five annuity contracts as of January 10, 2006, is $273,457.64.

Although the amount of money involved in this proceeding exceeds $273,000.00, it does not appear that this is the amount of money involved as to each Moving Defendant. The Moving Defendants do not address this factor with any specificity in their argument. Indeed, they do not even identify in which of the annuity contracts they claim an interest. While they each claim that they are "entitled to some or all of the proceeds of the annuity contracts ...,"[5] Moving Defendants' Mem. at 2, the

[5] Annuity contracts 038 and 074 form a part of the property at issue in the state court proceedings. The Moving Defendants commenced that action against Defendant Griggs around 1999, alleging that she exercised undue influence over her father, the late Frederick A. Gonya, shortly before his death, "causing him, on a date certain, to designate her as the death beneficiary, *inter alia*, on [these] two ... annuity contracts ...." Griggs' Response Mem. at 2.

court views negatively their failure to state more precisely the amount to which each Moving Defendant contends he is entitled. The court declines to weigh this factor in their favor.

***Summary of Factors***

In summary, the court finds that none of the factors weighs in favor of granting the Motions to Vacate. It further finds that the Moving Defendants' apparent lack of good faith as evidenced by their advancement of arguments which are contradicted or unsupported by the facts weighs heavily against granting their motions. For these reasons, the court finds that the Moving Defendants have not shown "good cause" as required by Rule 55(c) to set aside the entry of default.

Accordingly, the Motions to Vacate are DENIED.

ENTER:

DAVID L. MARTIN
United States Magistrate Judge
January 12, 2006

BY ORDER:

Deputy Clerk