UNITED STATES DISTRICT COURT
District of Rhode Island

Sun Life Assurance Co. of Canada (U.S.)

v. C.A. 05-172 ~~ML~~ S

Ida Conroy, Paul S. Davenport, Paul Gonya, Carol Kimberly Griggs, a/k/a Carol Kimberly, Jeffrey Luiz, H. Locke MacDonald, A. Michael Marino, Robert R. Nadeau, Anthony J. Robbio, Jr., and Frederick Von Fredrek

**RESPONSE OF DEFENDANT GRIGGS TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND ATTORNEYS' FEES**

The plaintiff, Sun Life Assurance Co. of Canada (U.S.) has moved for judgment on the pleadings, discharge and an award of attorneys' fees and costs. The defendant, Carol Kimberly Griggs, responds that pending further proceedings, the Court should: (a) in part, deny without prejudice, or defer consideration of, plaintiff's motion for judgment on the pleadings and discharge; and (b) deny the motion for attorneys' fees and costs.

The support for this Response is set forth in the accompanying Memorandum of law filed contemporaneously herewith.

Carol Kimberly Griggs,
By her Attorney,

Edward L. Gerstein, Esq., #2270
29 Meeting House Lane
Little Compton, RI 02837
Tel: (401) 635-2282
Fax: (401) 635-1612

CERTIFICATION

I hereby certify that a copy of the within Response was mailed, postage prepaid this 27 day of January, 2006 to:

Joan O. Vorster, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477

Avram N. Cohen, Esq.
155 South Main St.
Suite 204
Providence, RI 02903

Richard E. Kirby, Esq.
Macktaz, Keefer & Kirby
72 Pine Street
Providence, RI 02903

Edward DiPippo, Esq.
1062 Reservoir Ave.
Cranston, RI 02910

* Although his clients were defaulted, and service may not be necessary, Fed. R.Civ.P. 5, a courtesy copy of the within Memorandum was also mailed to Stephen J. Angell, Esq. 155 South Main Street, Providence, RI 02903-2963 this day.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SUN LIFE ASSURANCE CO. OF CANADA (U.S.)

v. C.A. 05-172 S

IDA CONROY, et al

**MEMORANDUM IN SUPPORT OF RESPONSE OF DEFENDANT GRIGGS TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND ATTORNEYS' FEES**

NATURE AND STATUS OF PROCEEDINGS

This is an interpleader action. Plaintiff, Sun Life Assurance Company of Canada (U.S.), alleges that disputes exist among the defendants to the proceeds of seven annuities issued by it. Each annuity is separately identified by contract number, value, and purported 'adverse claimants' (Complaint at ¶¶ 21-50). The annuities were purchased by Frederick A. Gonya in 1984 and 1985 (sometimes the "annuities" or "contracts"). He died on September 6, 1999. (Complaint at ¶ 16). When this action was commenced, the aggregate value of the seven annuities was approximately $301,147. 38 (Complaint at ¶¶ 24, 28, 32, 36, 41, 45 and 50). Jurisdiction is based on 28 U.S.C. § 1335 (Complaint at ¶ 2). [1]

Ten individuals are named defendants. Defaults entered against seven defendants ("defaulted defendants"). Motions to vacate the defaults filed by six of the seven defaulted defendants were denied (*Memorandum and Order, Martin, U.S.M.J.,* entered January 12,

[1] The Complaint and initial memorandum in support of plaintiff's motion to deposit proceeds also make passing reference to Fed. R. Civ. P. Rule 22, but do not assert 28 U.S.C. §§ 1331 or 1332 as an alternative basis for jurisdiction. It is settled that Rule 22, standing alone, does not invest a district court with interpleader jurisdiction. Rule 22 interpleader jurisdiction must be based on either federal question (§1331), or diversity (§1332). *Isaacs v. Walmac Co., Inc.*, 15 F.R.D. 341, 343 (D.R.I. 1954), and *General Accident Group v. Gagliardi* 593 F.Supp 1080 (D.Conn. 1984).

2006). Defaulted defendant Jeffrey Luiz has disavowed any interest in the annuity for which he is a putative 'adverse claimant' (contract 929). Defendants Conroy, MacDonald and Griggs resolved any disputes concerning the two annuities in which they allegedly have competing interests (contracts 056 and 065). As a result, the proceeds of five, rather than seven, annuities were deposited with the Court.

Plaintiff now moves for judgment on the pleadings and discharge from any further liability with respect to the annuities. In addition, it seeks payment from the annuity proceeds of attorneys' fees and costs in the amount of $20,053. 21.

Assuming payment of the proceeds of contracts 056 and 065 in a timely manner in accordance with the terms of the stipulation filed on January 5, 2006, defendant Griggs has no objection to plaintiff's being discharged with respect to those annuities. She also has no objection to plaintiff's being discharged from further liability to the defaulted defendants with respect to any of the annuities identified in the complaint. She does respond that any discharge as to her is premature, and objects to the motion for attorneys' fees and costs.

ARGUMENT

(A) Plaintiff is not entitled to judgment on the pleadings and discharge is premature.

A motion for judgment on the pleadings requires a district court to determine whether the pleadings, taken as a whole, reveal any potential disputes about one or more of the material facts. *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). Fed.R.Civ.P. 12(c) imposes "a relatively modest hurdle" to defend against a motion for judgment on the pleadings. *Id.* In considering such a motion, the "court must accept all of the non-moving party's well-pleaded factual averments as true and draw all reasonable inferences in her favor." *Feliciano v. Rhode Island*, 160 F.3d 780,788 (1st Cir. 1998). Unless

it appears beyond doubt that defendant can prove no set of facts that would entitle her to relief, judgment on the pleadings is not appropriate. *cf. Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991).

Here, the pleadings, taken as a whole, reveal potential disputes about plaintiff's failure to pay the proceeds, and inclusion in these proceedings, of certain annuities. The Complaint identifies an annuity in which defendant Griggs was named beneficiary in 1990 (contract 224, Complaint at ¶ 22) and fails to disclose that she was named beneficiary in 1994 of another annuity (contract 233, Complaint at ¶ 26). [2] In her answer, she affirmatively disputes the factual allegations raised (or omitted) by plaintiff with respect to annuities 224 and 233 (*cf.* Answer at ¶¶ 17, 19, 23, 27). This dispute is material because it could give rise to direct claims by this defendant against plaintiff, claims that will barred if the motion for discharge is allowed. [3]

The mere filing of an interpleader action does not insulate an insurer from potential liability for its conduct, but only from having to litigate separate claims in separate courts. cf. *Equitable Life Assurance Society of the United States v. Porter-Englehart*, 867 F.2d 79,

[2] In a subsequent memorandum, Plaintiff claims that the beneficiary for all of the annuities identified in the complaint was changed to defendant Griggs on August 19, 1999. (Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings and Attorney's Fees at 2). This is simply wrong. After default entered against seven of the defendants, plaintiff agreed to accept service of a limited subpoena by fax, and to provide defendant Griggs with some documents pertaining to communications with the defendants, or their counsel, and the Change of Beneficiary forms for the annuities in issue. According to documents provided by plaintiff, defendant Griggs was named the primary beneficiary on annuity 224 in 1990, and annuity 233 in 1994. No documents were provided to support the proposition that either annuity underwent a change in beneficiary in August 1999, or during the relevant time described in the state court proceedings. Other than some generalized ambiguous correspondence, the documents provided thus far by plaintiff do not disclose any genuine adverse claims to these two annuities.

[3] In plaintiff's Reply Memorandum in Support of its Motion to Deposit Proceeds, plaintiff took substantial liberty in re-casting the positions submitted by defendant Griggs. Plaintiff also claimed that adverse claims exist with respect to contract 233 because it has no change of beneficiary form in its file naming defendant Griggs as the beneficiary. (Plaintiff's Reply Memorandum at 4, fn. 1). While not privy to the contents of plaintiff's files, by letter dated June 6, 1994, plaintiff wrote to Frederick Gonya and confirmed that it received his Beneficiary Change request, and that defendant Griggs is the beneficiary of contract 233.

89-91 (1st Cir.1989). Absent knowledge of plaintiff's communications regarding the annuities, or inquiry by plaintiff to determine the *bona fides* of the assertion of purported adverse claims, an immediate counterclaim against plaintiff in response to the Complaint was not filed.

When discovery may bring to light claims that a stakeholder may be independently liable to an interpleader defendant, discharge should be denied or deferred pending discovery or resolution of any such claims. *Allstate Life Insurance v. Short*, 2005 WL 1972551 at 3 (S.D. Ohio, 8/12/05); and *Companion Life Insurance Co. v. Schaffer*, 442 F.Supp 826, 829 (S.D.N.Y. 1977). Moreover, no prejudice will result to plaintiff by denying or deferring decision on its motion for discharge at this time because: (a) it did not commence this action until almost six years after the death of its annuitant; (b) this interpleader is not in response to any actions brought, or threatened to be brought, against plaintiff concerning the annuities; (c) the court can enjoin the commencement of actions against the plaintiff in any other forum; and (e) plaintiff will remain obligated to respond to discovery requests, but if discharged will be insulated from liability on any claims that such discovery may disclose, and defendant Griggs will also incur additional expense in directing discovery efforts to a non-party.

(B) Plaintiff's request for attorneys' fees and costs in the amount of $20,053. 21 (or any similar amount) should be denied.

(1) The Court should deny plaintiff's request for attorneys' fees and costs.

An award of attorneys' fees and costs in an interpleader action is an equitable matter that is committed to the sound discretion of a district court. *In re Mandalay Shores Cooperative Housing Association, Inc., etc.*, 21 F.3d 380, 383 (11th Cir. 1994); *Travelers Indemnity Co. v. Israel*, 354 F. 2d 488, 490 (2nd Cir. 1965); and *Equitable Life Assurance*

*Society of the United States v. Porter-Englehart*, 867 F.2d at 89 (Court may award fees and costs to the stakeholder). Generally, the reasons that justify an award of fees are: (a) interpleader may provide a cost-efficient resolution in a single forum, rather than multiplicitous, piecemeal litigation; (b) the stakeholder often comes by the asset innocently; and (c) fees for the stakeholder typically are quite modest. *In re Mandalay Shores Cooperative Housing Association, Inc., etc.*, 21 F.3d at 383.

However, courts routinely determine that an award of attorneys' fees and costs is not warranted when a stakeholder's interpleader claim arises out of the normal course of its business. This standard is often applied to insurance companies. In *Travelers Indemnity Co. v. Israel*, 354 F.2d at 490 the court affirmed the denial of attorneys' fees and costs in an interpleader action based on various claims to fire insurance policies. Judge Friendly wrote:

> We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer part of their ordinary cost of doing business of their insureds by bringing an action for interpleader. Denial of allowances in this case was by no means as abuse of discretion.

Application of the "normal course of business standard" to interpleader actions brought by insurance companies was further explained in *In re Mandalay Shores Cooperative Housing Association, Inc., etc.*, 21 F.3d at 383:

> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds--disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

There is nothing unusual or extraordinary about conflicting claims to insurance or annuity proceeds. In *Sun Life Assurance Company of Canada v. Thomas*, 735 F.Supp. 730, 733 (W.D. Mich.1990), plaintiff insurer commenced an interpleader action based on conflicting claims to the proceeds of a group life insurance policy. Although the motion for discharge was granted, a request for attorneys' fees and costs was denied. The court reasoned:

> Conflicting claims to benefits owed to beneficiaries under *** a group life insurance policy, are inevitable. These potential conflicts are part of the business risk assumed by one who provides such policies. Given that interpleader frees the stakeholder from the vexation of multiple suits and liability, an interpleader action brought by *** an insurance company is brought primarily in the company's own self-interest. Since the initiation of this action is beneficial to Sun Life and in its own self-interest, the Court denies the request for attorney's fees and costs.
> (internal citations omitted).

See also: *Metropolitan Life Insurance Co v. Carter*, 2005 WL 2810699 at 11 (M.D.Fla. 10/27/05)(Fees and costs denied in interpleader action involving competing claims to annuity proceeds because such circumstances arise out of the normal course of business); *Life Investors Insurance Co. v. Childs*, 209 F.Supp.2d 1255, 1256 (M.D.Ala. 2002)(Fees and costs denied in Rule interpleader action because the matter is a routine dispute over the proceeds of a life insurance policy. Unlike a stakeholder who comes by a disputed asset innocently, an insurance company can plan for interpleader as a regular cost of business); *Unum Life Insurance Company of America v. Kelling*, 170 F.Supp.2d 792, 794-796 (M.D. Tenn. 2001)(Fees and costs denied in statutory interpleader action because conflicting claims to insurance proceeds are inevitable and occur during the normal course of business. Insurance companies also have a self-interest and benefit from interpleader by obtaining a judgment and avoiding further litigation); and *Minnesota Mutual Life Insurance Co. v.*

*Gustafson*, 415 F.Supp. 615, 618-619 (N.D.Ill. 1976)(The chief beneficiary of an interpleader action is the insurance company. Conflicting claims to the proceeds of an insurance policy are of a kind that usually arises in the course of business. Absent extraordinary circumstances fees should not be awarded).

Here, plaintiff develops, markets, manages, issues and distributes the proceeds of various annuity, insurance and other financial products, including those in issue. Plaintiff is a wholly owned subsidiary of Sun Life Financial Inc. ("SLF"), a publicly traded company that sells annuities, insurance products and other financial services throughout the world. According to its 2004 Annual Report ("Ann.Rpt."), SLF has $359.6 billion in assets under management (Ann.Rpt. at 15), a market capitalization of $24 billion (Id at 7), and annual annuity sales in the United States of approximately $4.1 billion (Id at 25). SLF claims it is one of the top 10 insurance companies in North America (Id at 7), and posted record operating earnings in 2004 of $1.7 billion (Id at 5). SLF is focused, in part, on expanding the sale and distribution of its annuity products in the United States (Id at 7).[4]

Through its authorized agents, plaintiff sold Frederick Gonya the annuities at issue. It was inevitable that, at some point, he would die. The possibility of competing claims to the annuity proceeds was foreseeable as a matter of fact and law. Plaintiff created the annuities, and came into possession of the annuity proceeds, during the course and in furtherance of its ordinary business. It is not an unwitting or innocent bystander. Plaintiff could have factored into the price of its products the costs of the resolution of conflicting claims to benefits. [5] As

---

[4] The business facts about Plaintiff are gleaned from the Complaint, the 2004 Annual Report of SLF and other information made available to the public at the SLF web site: http://www.sunlife.com . See also: http://www.sunlife-usa.com . SLF trades, inter alia, on the NYSE under the symbol "SLF."

[5] Plaintiff has not yet produced the actual annuities in issue. It would be interesting to determine whether those annuities advise the purchaser that his estate, or his beneficiaries, are responsible for the payment of plaintiffs' attorneys' fees and costs, if a dispute arises with respect to the distribution of proceeds.

such, plaintiff assumed the ordinary and foreseeable business risk of potential conflicting claims to the proceeds of the annuities. It should not be permitted to realize a windfall and shift the ordinary costs of doing business to this defendant. Moreover, as this proceeding is to further plaintiff's self-interests, it would be unjust to tax the fund (and therefore this defendant's interests) to pay for the cost of plaintiff's benefits.

(2) An award of fees and costs, if any, should be modest.

Interpleader fee awards are typically modest. *Trustees of the Directors Guild of America-Producer Pension Benefits Plans v Tise,* 234 F.2d 415, 426, 427 (9th Cir. 2000). "By its very nature [an award of fees and costs] is of a very small amount, simply to compensate for initiating the proceeding." *Ferber Company v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962).

An award of attorneys' fees in an interpleader action is not the result of a formulaic application as the plaintiff suggests. Compliance with the "criteria" of a lack of interest in the fund, deposit, and conceding liability that the fund is owed to someone, does not entitle the plaintiff to fees.

In deciding an interpleader fee application, a district court can consider a myriad of factors, such as, but not limited to: (a) whether the plaintiff benefits from the action, *Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414 (D.Kan. 1997), and *Unum Life Insurance Company of America v. Kelling,* 170 F.Supp.2d at 794; (b) the conduct and litigation decisions of the stakeholder, *Metropolitan Life Insurance Co v. Carter*, 2005 WL 2810699 at 11, and *Trustees of the Directors Guild of America-Producer Pension Benefits Plans v Tise*, 234 F.2d at 426-427; (c) the nature of the work claimed as compensable, *Nestle Beverage Co. v. Bayersiche Vereinbank, S.A.,* 1993 WL 96584 at 3 (N.D.Cal., 3/24/93); (d) whether any extraordinary circumstances are presented, *Minnesota Mutual Life Insurance Co. v. Gustafson,*

415 F.Supp. at 619; and (e) the public policy in maintaining the integrity of the fund, *Life Investors Insurance Co. v. Childs*, 209 F.Supp.2d at 1256.

For the reasons stated above in Section (B)(1), it is obvious that plaintiff is the primary beneficiary of these proceedings and did not unwittingly come into possession of the funds. Moreover, as an action was already pending in state court, this action potentially causes the defendant Griggs to litigate her claims in two courts.

Plaintiff also made certain litigation decisions that increased the expense to plaintiff and this defendant. The fund (and therefore the defendant) should not bear the costs of those decisions. The plain language of 28 U.S.C. §1335(a) imposes the jurisdictional requirement that a stakeholder deposit the disputed funds or property with the Court. *Metropolitan Property and Casualty Insurance Co. v. Shan Trac, Inc.*, 324 F.3d 20 (1st Cir. 2003); *In re the Sinking of the M/V Ukola,* 806 F.2d 1, 5 (1st Cir. 1986). The deposit (or the posting of a bond) can certainly be made at the time the action is commenced. *Equitable Life Assurance Society of the United States v. Porter-Englehart*, 867 F.2d at 82 (Deposit is made contemporaneous with start of suit); and *United States Fire Insurance Co, et al v. Asbestospray*, 182 F.3d 201, 205 (3rd Cir. 1999)(Insurers file interpleader bond with commencement of suit). See also: *General Accident Group v. Gagliardi*, 593 F.Supp at 1086-1087 (The deposit of disputed funds is a jurisdictional requirement under 28 U.S.C. § 1335(a). However, courts will generally provide an opportunity to cure the failure to deposit before dismissing an interpleader action).

Here, plaintiff knew the value of the annuities at the time the Complaint was filed. It could have, but did not, then deposit the funds. Instead, it engaged in costly motion practice in an effort to comply with the deposit requirement of 28 U.S. C. § 1335. Deposit of the funds at the commencement of this action would have made that motion practice unnecessary.

The plaintiff also added expense by its choice of counsel that, in turn, required the engagement and involvement of local counsel on its behalf. While the defendant does not assert that the choice of counsel was improper, she does dispute that the fund should bear the cost of that choice. cf. *Mokeover v. Neco Enterprises, Inc.*, 785 F. Supp. 1083 (D.R.I. 1992).

A review of the billing statement submitted on behalf of plaintiff also reveals charges for attorneys performing ministerial functions, multiple reviews of business documents by multiple lawyers, and time expended as a result of the deliberate choices made by plaintiff. However, it is not the purpose of this defendant to subject the Court to the Herculean task of a line by line analysis of plaintiff's claim for fees, nor is such Pecksniffian detail amenable to the limits of this memorandum.

There is nothing complex about this matter. The "stake" is from a single source, comprised entirely of the proceeds of annuities issued by plaintiff. Records relevant to those annuities were maintained in the ordinary course of business by, and readily available to, plaintiff. No complicated legal or factual matters are presented. The number of annuities and defendants are the result of plaintiff's business decisions. No extraordinary circumstances are presented. Under the circumstances, a request for fees and costs equal to approximately 5% of the fund is hardly modest.

CONCLUSION

For the foregoing reasons, and such others as may be presented, defendant Griggs submits that the motion for attorneys' fees or costs should be denied. Without waiving that position, in the alternative, this defendant submits that any such award should not exceed a reasonable amount consistent with the limited scope of awards in interpleader actions, and one that does not have a meaningful impact on the funds deposited.

Carol Kimberly Griggs,
By her Attorney,

Edward L. Gerstein, Esq., #2270
29 Meeting House Lane
Little Compton, RI 02837
Tel: (401) 635-2282
Fax: (401) 635-1612

CERTIFICATION

I hereby certify that a copy of the within Memorandum was mailed, postage prepaid this 27 day of January, 2006 to:

Joan O. Vorster, Esq.
Mirick, O'Connell
100 Front Street
Worcester, MA 01608-1477

Avram N. Cohen, Esq.
155 South Main St.
Suite 204
Providence, RI 02903

Richard E. Kirby, Esq.
Macktaz, Keefer & Kirby
72 Pine Street
Providence, RI 02903

Edward DiPippo, Esq.
1062 Reservoir Ave.
Cranston, RI 02910

* Although his clients were defaulted, and service may not be necessary, Fed. R.Civ.P. 5, a courtesy copy of the within Memorandum was also mailed to Stephen J. Angell, Esq. 155 South Main Street, Providence, RI 02903-2963 this day.